Case 5:25-cv-00001-JHY-JCH   Document 34   Filed 07/01/25   Page 1 of 12
Pageid#: 272

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 01, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Mitchell Allen, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:25-cv-00001 |
| ) | |
| John Barksdale, Jr. ) | |
| ) | |
| and ) | |
| ) | |
| Penske Logistics, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Mitchell Allen, Jr., brought this action against Defendants John Barksdale, Jr. and Penske Logistics, LLC to recover damages for injuries he suffered in a motor vehicle accident. This matter is before the court on Penske Logistics, LLC's motion to dismiss Allen's amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 25). For the reasons that follow, the court will grant the motion to dismiss.

**I.   Background**

The facts in this section are taken from the amended complaint and are accepted as true when resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Early in the morning of February 1, 2022, Allen was sitting on a "crash truck" that was stopped partially on the side of Interstate 81 in Augusta County, Virginia. (Am. Compl. ¶ 7 (Dkt. 21).) The crash truck had a flashing arrow attached, which indicated that traffic should

change lanes due to road work ahead on the interstate. (*Id.*)  At the time, Barksdale was driving northward in a 2022 Freightliner Cascadia truck owned by Penske. (*Id.* ¶ 8.)  Allen alleges that Barksdale "failed to change lanes as instructed by the flashing arrows, and caused his vehicle to collide with the crash truck," seriously injuring Allen.  (*Id.* ¶¶ 8–9.)  Allen claims that Barksdale was an employee and agent of Penske and was acting within the scope of his employment at the time of the accident.  (*Id.* ¶ 10.)

On January 12, 2024, Allen filed suit against Barksdale and "Penske Truck Leasing Co."[1] in the Circuit Court of Augusta County, Virginia. (*See* Compl. (Dkt. 1-1).)  His original complaint alleged claims for negligence and recklessness under Virginia law and sought to recover $1,000,000 in compensatory damages.  (*See id.* ¶¶ 11–25; *id.* at 6.)  On November 25, 2024, the state court issued summonses for Penske Logistics, LLC and Penske Truck Leasing Corporation.  (Dkts. 1-2, 1-3.)  Allen did not obtain a summons for Penske Truck Leasing Co., the only Penske entity he had named as a defendant.  Penske Logistics, LLC and Penske Truck Leasing Corporation were served on December 10, 2024.  (Dkt. 17 at 50, 60.)

Penske Trucking Leasing Co. timely filed a notice of removal in this court on January 2, 2025.[2]  (Dkt. 1.)  On January 9, 2025, it moved to dismiss the complaint for insufficient process, insufficient service of process, and failure to state a claim on which relief may be

---

[1] Penske Truck Leasing Co. informed the court that its correct name is Penske Truck Leasing Co., L.P.  (Dkt. 5 at 1.)

[2] To comply with the statutory requirements for removal, Penske Truck Leasing Co. needed to file a notice of removal "within 30 days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b)(1) (emphasis added).  When it filed its notice of removal on January 2, 2025, Penske Truck Leasing Co. had not received proper service.  At the earliest, it received a copy of Allen's complaint when Allen served the two other Penske entities on December 10, 2024.  Because Penske Truck Leasing Co. filed the notice of removal within 30 days of that date, removal was timely.  *See, e.g.*, *Henderson v. Truist Bank*, No. 1:22-cv-00341, 2022 WL 17417167, at *3 (E.D. Va. Dec. 5, 2022) (holding that removal was timely when it occurred before the defendant received proper service and within 30 days of the date the defendant received a copy of the plaintiff's pleading).

- 2 -

granted. (Dkt. 6.) That same day, Penske Logistics, LLC and Penske Truck Leasing Corporation—the entities Allen had served but not named in his complaint——filed a motion to dismiss for insufficient process, failure to state a claim, and failure to name either entity as a defendant under Rule 4(a)(1)(B) and Rule 10(a) of the Federal Rules of Civil Procedure. (Dkt. 8.)

On March 24, 2025, the court granted Allen's consent motion for leave to amend his complaint, which mooted the two motions to dismiss. (Dkt. 20.) The amended complaint removed Penske Truck Leasing Co. as a party and named Penske Logistics, LLC (hereinafter, "Penske") as the sole corporate defendant.[3] Count I of the amended complaint alleges that Barksdale negligently and recklessly caused Allen's injuries. (Am. Compl. ¶¶ 11–15.) Count II alleges those same claims against Penske, while also alleging that Penske "recklessly allowed" Barksdale to operate the vehicle in a negligent and reckless manner. (*Id.* ¶¶ 16–20.) Count III alleges a negligence *per se* claim against Barksdale and Penske. (*Id.* ¶¶ 21–23.) Finally, Count IV asserts claims against Penske for negligent hiring, negligent training, negligent retention, and negligent supervision of Barksdale, as well as a claim for negligent maintenance of the vehicle. (*Id.* ¶¶ 24–25.) As he did in his original complaint, Allen seeks $1,000,000 in compensatory damages. (*Id.* at 7.)

On April 16, 2025, Penske moved to dismiss the amended complaint under Rule 12(b)(6).[4] (Dkt. 25.) Allen did not file a response to the motion to dismiss within the fourteen-

---

[3] The amended complaint also corrected Barksdale's name to "John Barksdale, Jr." (*See* Am. Compl.)

[4] The record does not indicate when Allen served Penske (that is, Penske Logistics, LLC) with a summons and copy of the amended complaint. The Clerk issued a summons for Penske on March 27, 2025, one day after Allen filed the amended complaint. (*See* Dkt. 23.)

day period prescribed by this District's Local Rules.  *See* W.D. Va. Civ. R. 11(c)(1).  Barksdale filed an answer to the amended complaint on April 3, 2025.  (Dkt. 24.)

## II.  Standard of Review

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  To avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement."  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

## III.  Analysis

Allen has not responded to the arguments Penske raises in support of its motion to dismiss.  Even when a plaintiff does not respond to a motion to dismiss, "the district court nevertheless has an obligation to review the motion[] to ensure that dismissal is proper."  *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014); *see also Goudy v. Navy*

*Fed. Credit Union Found.*, No. 23-1721, 2024 WL 2206508, at *1 (4th Cir. May 16, 2024) (vacating and remanding district court decision that dismissed complaint based solely on the plaintiff's failure to respond to the defendant's motion to dismiss). Based on this precedent, the court will proceed to analyze the merits of Penske's motion to dismiss.

### A. Count II does not sufficiently plead that Penske is vicariously liable for Barksdale's negligent or reckless conduct.

Penske first argues that Count II of the amended complaint does not sufficiently allege that Penske is vicariously liable for Barksdale's conduct. (Penske's Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Am. Compl. at 3–5 (Dkt. 26).) The court agrees.

Under a theory of vicarious liability, or *respondeat superior*, "[a]n employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 22 (Va. 2019) (quoting *Parker v. Carilion Clinic*, 819 S.E.2d 809, 819 (Va. 2018)). Conduct falls within the scope of employment only if it was (1) "expressly or impliedly directed by the employer [or] naturally incident to the business" and (2) "performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the employee to do the act upon his own account." *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 750 (E.D. Va. 2001) (quoting *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987)). If a plaintiff plausibly alleges an employer-employee relationship, it creates a rebuttable presumption that an employee acted within the scope of their employment. *Gill v.*

*Food Lion, LLC*, No. 7:24-cv-00152, 2025 WL 444764, at *6 (W.D. Va. Feb. 10, 2025) (citing *Parker*, 819 S.E.2d at 817–18).

Count II does not state a claim against Penske based on a theory of *respondeat superior*. As Penske points out, the amended complaint makes no reference to *respondeat superior* or vicarious liability in Count II (or elsewhere). Instead, Count II first appears to focus on Penske's alleged failure to supervise Barksdale by claiming that Penske had a duty to ensure that Barksdale operated the vehicle with reasonable care yet "recklessly allowed [him] to operate his vehicle so carelessly and negligently that . . . it caused a collision." (Am. Compl. ¶¶ 17–18.)

Nor do the other allegations in Count II pass muster. Count II next alleges that Penske committed the same series of negligent and reckless actions that Count I alleges against Barksdale. (*See id.* ¶¶ 14, 19.) It also incorporates by reference the amended complaint's factual allegations, including one stating that Barksdale was an agent and employee of Penske and "was performing his duties within the scope of his employment" at the time of the accident. (*Id.* ¶¶ 10, 16.) Those allegations *may* indicate that Allen intended for Count II to assert that Penske is vicariously liable for Barksdale's conduct. But because Count II itself says nothing about vicarious liability—and instead appears to allege a theory of direct liability—it does not contain the "plain statement of the claim" that Rule 8(a)(2) requires. Fed. R. Civ. P. 8(a)(2).

Even if Allen had pled a theory of vicarious liability in Count II, he has not plausibly alleged that Barksdale's underlying conduct was "reckless at law." (Am. Compl. ¶ 19.) Courts applying Virginia law have construed allegations of "recklessness" as claims for willful and

- 6 -

wanton conduct. *See Canada v. Masri*, No. 3:21-CV-00655, 2021 WL 6196998, at *1 n.1 (E.D. Va. Dec. 30, 2021). Willful and wanton conduct is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Griffin v. Shively*, 315 S.E.2d 210, 213 (Va. 1984). This tort involves a greater degree of culpability than gross negligence, "particularly in the sense that . . . an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission." *Id.* (citing *Boward v. Leftwich*, 89 S.E.2d 32, 35 (Va. 1955)). In other words, it "generally involves some type of egregious conduct." *Masri*, 2021 WL 6196998, at *2.

It is difficult for a plaintiff to show that a defendant's conduct meets this heightened standard. For example, in one case involving a motor vehicle accident, the Supreme Court of Virginia held that the plaintiff had not offered sufficient evidence of willful and wanton conduct even though the defendant's blood alcohol content was 0.24% shortly after the accident, there was no evidence the defendant had tried to stop before the collision, the defendant continued to drink alcohol in his car after the collision, and the defendant later pled guilty to reckless driving. *See Puent v. Dickens*, 427 S.E.2d 340, 341–42 (Va. 1993). In another case arising from a drunk-driving accident, the Supreme Court found sufficient evidence of willful and wanton conduct where the defendant had previous drunk-driving convictions and had attended alcohol safety courses, collided with another car immediately before injuring the plaintiff yet continued driving at an excessive speed, and left the scene of the accident after colliding with the plaintiff's vehicle. *See Huffman v. Love*, 427 S.E.2d 357, 360–61 (Va. 1993).

Here, Allen has not plausibly alleged that Barksdale's actions rose to the heightened level of willful and wanton conduct. The amended complaint states that Barksdale and Penske "failed to slow down in a work zone," "failed to keep a proper lookout," "failed to have their vehicle under proper and adequate control at the time"; "failed to apply their brakes in time to avoid the collision"; and "failed to give full time and attention to the operation of their vehicle." (Am. Compl. ¶ 19; *see id.* ¶ 14.) It further alleges that Barksdale "failed to change lanes as instructed by the flashing arrows, and caused his vehicle to collide with the crash truck" Allen was sitting on. (*Id.* ¶ 8.) Those alleged facts, without more, do not reflect the type of "egregious conduct" needed to support a claim for willful and wanton conduct. *Masri*, 2021 WL 6196998, at *2.

### B. Count II does not plausibly allege that Penske is directly liable for willful and wanton conduct.

As noted above, Count II appears to assert that Penske directly engaged in reckless conduct. It alleges that Penske had a duty to ensure Barksdale operated the vehicle with reasonable care, yet "recklessly allowed [Barksdale] to operate his vehicle so carelessly and negligently that . . . it caused [the] collision." (Am. Compl. ¶¶ 17–18.) But Allen has not alleged that Penske itself took *any* actions that demonstrated a conscious disregard for his rights or reckless indifference to probable harm. He cannot state a claim for willful and wanton conduct based solely on a conclusory allegation of recklessness without more. Accordingly, the court concludes that Count II does not state any claim for relief against Penske.

## C. Count III does not state a negligence *per se* claim against Penske.

In Count III, Allen alleges that Barksdale and Penske are liable for negligence *per se*. (Am. Compl. ¶¶ 21–23.) He claims that Barksdale and Penske "fail[ed] to adhere to state and federal statutes and regulations, including, but not limited to Va. Code § 46.2-852 (reckless driving), § 46.2-869 (improper driving), § 46.2-853 (driving a vehicle not under control), and 49 C.F.R. §§ 300-399" (the Federal Motor Carrier Safety Administration ("FMCSA") regulations). (Am. Compl. ¶ 22.) Like Count II, Count III makes no reference to vicarious liability or *respondeat superior* and thus does not state a vicarious negligence *per se* claim against Penske. Nor does Count III plausibly allege that Penske is directly liable for any of the statutory violations. Thus, the court will dismiss Allen's claims against Penske in Count III.[5]

## D. Count IV fails to state a claim against Penske for negligent hiring, training, retention, supervision, or maintenance.

Count IV alleges that Penske was negligent in hiring, training, supervising, and retaining Barksdale and in maintaining the vehicle involved in the accident. (Am. Compl. ¶ 25.) Allen alleges no additional facts to support these claims, and none withstands Rule 12(b)(6) scrutiny.

First, Allen alleges that Penske was negligent in hiring Barksdale. The Supreme Court of Virginia has recognized the independent tort of negligent hiring, which "imposes direct liability on the employer 'if the employer is negligent in the hiring of an improper person in

---

[5] Even if he had alleged a theory of vicarious liability, Allen could not state a negligence *per se* claim based on his general citation to the FMCSA regulations. To establish negligence *per se* under Virginia law, a plaintiff must prove (1) "that the defendant violated a statute that was enacted for public safety"; (2) "that he belongs to the class of persons for whose benefit the statute was enacted"; (3) "that the harm that occurred was of the type against which the statute was designed to protect"; and (4) "that the statutory violation was a proximate cause of the injury." *Halterman v. Radisson Hotel Corp.*, 523 S.E.2d 823, 825 (Va. 2000). Because multiple elements of negligence *per se* turn on the nature of the statute violated, Allen cannot state a claim merely by citing the entire body of FMCSA regulations. *See Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 507 (E.D. Va. 2013) (dismissing a negligence *per se* claim because the plaintiff failed to identify the specific statute or regulation she believed the defendant violated). Nor can Allen state a claim based on unidentified statutes or regulations.

work involving an unreasonable risk of harm to others.'" *Le Doux v. W. Express, Inc.*, 126 F.4th 978, 988 (4th Cir. 2025) (quoting *Se. Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999)). A plaintiff who alleges negligent hiring must show that "an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation." *Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426, 431 (Va. 2000). Aside from his conclusory statement that Penske was negligent in hiring Barksdale, Allen does not allege any facts regarding Penske's hiring process or decision to hire Barksdale. He therefore has not stated a plausible claim for negligent hiring.

Allen's negligent retention claim fails for the same reason. The tort of negligent retention allows a plaintiff to recover "for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]." *Doe ex rel. Doe v. Baker*, 857 S.E.2d 573, 582 (Va. 2021) (citation omitted). It "requires a showing that the risk of future harm was so grave that discharging the dangerous employee would have been the only reasonable response." *A.H. ex. rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 474 (Va. 2019). To establish a *prima facie* case of negligent retention, a plaintiff must make "an amplified showing that both the nature and gravity of the risk render unreasonable any mitigating response short of termination." *Id.* Allen fails to state a negligent retention claim because he alleges no facts regarding Barksdale's dangerousness or Penske's knowledge thereof.

Allen's negligent training and supervision claims are subject to dismissal as well. As to the former, this court is not aware of any authority recognizing a cause of action for negligent training under Virginia common law. *See Warner v. Centra Health Inc.*, 503 F. Supp. 3d 479, 500

(W.D. Va. 2020) ("Plaintiff tries to bring a negligence claim based on negligent training and supervision under Virginia common law. However, such a cause of action does not exist[.]"); *McDonald v. Betsinger*, No. 7:15-CV-00477, 2016 WL 958737, at *3 (W.D. Va. Mar. 8, 2016) ("[T]he court declines to recognize a cause of action for negligent training as such cause of action has not been clearly established in Virginia."); *Parrish v. Am. Airlines, Inc.*, 97 Va. Cir. 271, 2017 WL 9917197, at *5 (Va. Cir. Ct. Dec. 12, 2017) ("[T]he Court is not aware of any authority recognizing negligent training in Virginia, and a number of Virginia courts have declined to recognize negligent training in cases in which the cause of action was proposed."). Even if Virginia courts did recognize a cause of action for negligent training, Allen has not alleged any non-conclusory facts that suggest Penske failed to provide training to Barksdale.

So, too, with Allen's negligent supervision claim. The Supreme Court of Virginia has declined to recognize "a free-standing cause of action" for negligent supervision. *A.H.*, 831 S.E.2d at 475 (citing *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988)); *see also Eley v. Evans*, 476 F. Supp. 2d 531, 532 n.3 (E.D. Va. 2007) ("[F]ederal and Virginia courts have held that Virginia does not recognize negligent supervision as a valid cause of action."). And even if Allen could proceed on such a theory, he has not alleged any facts that speak to Penske's supervision of Barksdale.

Finally, Allen has not adequately pled that Penske was negligent in maintaining the truck involved in the accident. As a general rule, "an automobile owner who intrusts [sic] his vehicle to another with the knowledge that it is to be operated on a public highway must use ordinary care to see that the vehicle is in a reasonably safe condition for the contemplated use." *Dudley v. Cash*, 82 Va. Cir. 1, 2010 WL 11020163, at *5–6 (Va. Cir. Ct. May 25, 2010)

(quoting *Harris v. Duane*, 11 Va. Cir. 362 (1971)).  Allen's factual allegations focus only on Barksdale's operation of the vehicle—he does not allege any non-conclusory facts that address the vehicle's maintenance.  The negligent maintenance claim therefore fails as a matter of law. *See Abiola v. Wash. Metro. Area Transit Auth.*, No. GLS 20-437, 2023 WL 2633616, at *7 (D. Md. Mar. 24, 2023) (holding that a plaintiff failed to state a negligent maintenance claim because the plaintiff's allegations were "entirely limited to the [d]efendant's operation of [the vehicle] *while* [the vehicle] was on the road").

Accordingly, the court will grant Penske's motion to dismiss Count IV.

### IV.   Conclusion

For the reasons stated above, Penske's motion to dismiss the amended complaint (Dkt. 25) will be **GRANTED**, and Allen's claims against Penske will be **DISMISSED** without prejudice.  The court will **GRANT** Allen leave to file an amended complaint within **21 days** of the date of the Order that accompanies this Memorandum Opinion.

**ENTERED** this 1st day of July, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE